# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Military Aircraft Parts ) | ASBCA No. 60692 |
| ) | |
| Under Contract No. SPM4A7-11-M-M395 ) | |

APPEARANCE FOR THE APPELLANT:     Mr. Robert E. Marin
                                  President

APPEARANCES FOR THE GOVERNMENT:   Daniel K. Poling, Esq.
                                    Chief Trial Attorney
                                  Jason D. Morgan, Esq.
                                  Edward Murray, Esq.
                                    Trial Attorneys
                                    DLA Aviation
                                    Richmond, VA

## OPINION BY ADMINISTRATIVE JUDGE PAUL
## ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

This is an appeal of a contracting officer's (CO) final decision denying appellant Military Aircraft Part's (MAP) monetary claim in a total amount of $10,673. MAP opted to use the Board's accelerated procedures pursuant to Board Rule 12.3. Respondent filed a motion for summary judgment, contending that MAP's appeal was barred by the doctrines of release and accord and satisfaction. The parties submitted a total of five briefs. We grant respondent's motion and deny the appeal.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION[1]

1. On 26 April 2011, the Defense Logistics Agency (DLA) awarded Contract No. SPM4A7-11-M-M395 to MAP in a total, fixed-price amount of $18,975. Pursuant to the contract, MAP was required to produce two first article test samples of aircraft stringers by 22 December 2011 (R4, tab 1 at 1-4). MAP did not meet this requirement; instead, it submitted the first articles on 29 June 2012, over six months late (compl. ¶ 9).

---

[1] We make these findings for the sole purpose of resolving the summary judgment motion.

2. On 9 October 2012, Mr. Billy Trussell, a DLA engineer, wrote in a memorandum that the first articles had been inspected and rejected. He wrote, as follows:

> a) Stringer was made too short at outboard end. This must be corrected. This area is largely defined by loft data/datum lines.
>
> b) Dimensional discrepancies were found during dimensional test and must be corrected.
>
> 2. It is engineering's recommendation the vendor be allowed to correct these discrepancies and resubmit the first article. The vendor should resubmit within 60 days of notification of rejection.
>
> 3. One item was destroyed in testing. The engineer recommends the remaining be returned to the vendor. Please provide disposition instruction to the First Article Manager.
>
> 4. The first article was inspected by 802 Maintenance Support Squadron, Material Flight and the actual testing cost was $6,170.04.
>
> 5. Systems' engineering spent 8.0 hours reviewing and evaluating the first article report. The First Article Manager spent 9.5 hours in support of a first article. The total engineering time is 17.5 hours.
>
> 6. Point of contract is Daniel Murphy, AFLCMC/WWQEB, DSN 468-3665.

(R4, tab 6 at 1 of 16)

3. On 16 October 2012, Ms. Alicia Wolford, the CO, forwarded the following memorandum to Mr. Robert Marin, MAP's President:

> On April 26, 2011, the government awarded the above contract to your firm, which included a first article test. I write to inform you that the first article **is disapproved**. During the review, government representatives discovered the following deviations from the contract's requirements:

2

a). Stringer was made too short at outboard end. This area has to be corrected. This area is largely defined by loft data/datum lines.

b). Dimensional discrepancies were found during dimensional test and must be corrected.

Based on the disapproval of the First Article Test and the contract is delinquent, this contract will be terminated for the convenience of the Government. If you have any questions on this action, please contact Lisa Hardy, Contract Administrator....

(R4, tab 7)

4. On 6 February 2013, Mr. Marin replied to Ms. Lisa Hardy, the Contact Administrator, in part, as follows:

We believe the item length was manufactured exactly per the data supplied by the Government. If the length is too short, we respectfully request the Government supply a new overall length dimension to meet and allow us to continue work on this contract with conditional approval.

(R4, tab 9 at 1 of 23)

5. On 13 February 2013, the CO forwarded a show cause notice to MAP in which she wrote as follows:

The First Article Letter received by your firm 14 DEC 2012 is hereby rescinded.

On 26 APR 2011, the government awarded the above contract to your firm, which included a first article test. I write to inform you that the first article is **disapproved**. During testing, government representatives discovered the following deviations from the contract's requirements:

1. NSN 1560-01-586-5385, P/N 68A118103-2012, Aircraft Stringer, 2 each submitted by Military Aircraft Parts (Cage 1ZKE3) as first articles, have been inspected and rejected.

3

a) Stringer was made too short at outboard end. This must be corrected. This area is largely defined by loft data/datum lines.

b) Dimensional discrepancies were found during dimensional test and must be corrected.

**Show Cause Notice:** Because your firm failed to provide a first article that meets the contract's first article testing requirements, the government is considering terminating the contract for default. Pending a final decision in this matter, it will be necessary to determine whether your failure to perform arose from causes beyond your control and without your fault or negligence. Accordingly, you are given the opportunity to present, in writing, any facts bearing on the question to me at (address of contracting officer), within 10 days after receipt of this notice. Your failure to present any excuses within this time may be considered as an admission that none exist. Your attention is invited to the respective rights of your firm and the government and the liabilities that may be invoked if a decision is made to terminate for default.

Any assistance given to you on this contract or any acceptance by the government of delinquent goods or services will be solely for the purpose of mitigating damages, and it is not the intention of the government to condone any delinquency or to waive any rights the government has under the contract. If you desire to have your disapproved first article returned, you must provide your shipping account information (e.g. FedEx or UPS account number), desired point of contact, phone number, and address within 30 days. Failure to do so will result in the destruction of the first article.

Point of Contact for this letter is Lee Skimin....

(R4, tab 10 at 1-2 of 3)

4

6. On 27 June 2013, the CO responded to MAP's rebuttal letter of 6 February 2013. She wrote:

> In reference to your rebuttal, dated 6 FEB 2013, regarding subject Contract/Order SPM4A711MM395, this letter is to inform you that the First Article Test submitted under subject contract remains **disapproved**.
>
> Engineer has reviewed MAP's FAT rebuttal. After reviewing the loft data, dimensional analysis, and the part. The part failed FA being deemed too short.
>
> ESA compared their loft data analysis for overall length of the part to the drawing provided by MAP. MAP has a length marked 86.71" on their drawing and I found this dimension to be closer to 87.98". I found the problem area to be primarily outboard of XFS 287.896. The portion of stringer outboard of this section seems to be the cause. The part cannot be used in the current condition and conditional approval cannot be granted. A new FA will have to be made and tested before approval.
>
> **Show Cause Notice:** Because your firm failed to provide a first article that meets the contract's first article testing requirements, the government is considering terminating the contract for default. Pending a final decision in this matter, it will be necessary to determine whether your failure to perform arose from cases beyond your control and without your fault or negligence. Accordingly, you are given the opportunity to present, in writing, any facts bearing on the question to the contracting officer, within 10 days after receipt of this notice. Your failure to present any excuses within this time may be considered as an admission that none exist. Your attention is invited to the respective rights of your firm and the government and the liabilities that may be invoked if a decision is made to terminate for default.
>
> Any assistance given to you on this contract or any acceptance by the government of delinquent goods or services will be solely for the purpose of mitigating damages, and it is not the intention of the government to condone any delinquency or to waive any rights the

government has under the contract. If you desire to have your disapproved first article returned, you must provide your shipping account information (e.g. FedEx or UPS account number), desired point of contact, phone number, and address within 30 days. Failure to do so will result in the destruction of the first article.

Point of Contact for this letter is Lee Skimin....

(R4, tab 12)

7. In an ongoing series of emails, Mr. Marin and Mr. Lee Skimin, a DLA purchase agent and MAT's point of contact with DLA, discussed a possible resubmission of the first article test samples. On 26 August 2013, Mr. Marin stated that "[w]e would like to resubmit but regrettably, we cannot shoulder the immediate retesting costs...." On 6 September, Mr. Skimin responded by asking Mr. Marin "[w]ill you accept a no-cost cancellation?" Mr. Marin replied on that same day that "[y]es, that might be the best course of action." (R4, tab 13 at 1-2 of 9)

8. Accordingly, on 13 September 2013, the CO and Mr. Marin executed Modification No. P00001 to the contract. It provided, as follows:

The Local Administrator is changed from Lisa Hardy to Lee Skimin.

Cancel the following CLIN(s) to the extent indicated below at no cost or liability to the Government or contractor.

| CLIN | Supplies/ Services | CLIN Qty. | U/I | Unit Price | Amount | From Qty | To Qty |
|------|--------------------|-----------|-----|------------|--------|----------|--------|
| 0001 | 1560-01586-5385 | 5 | EA | $1,795.00 | $8,975.00 | 5 | 0 |
| 0002 | 0001-S00000052 | 1 | EA | $10,000.00 | $10,000.00 | 1 | 0 |

CLIN 0002, formerly CLIN 9906, is deleted reducing the contract amount by $10,000.00.

This modification, P00001, is hereby issued to subject Contract/Order as follows:

1. Delete and deobligate the First Article Test CLIN 9906 in the amount of $10,000.00.

6

2. CLIN 0002 is hereby established as a replacement CLIN for First Article Test requirement as follows under a new line of accounting:

Ship to DoDDAC    FD2060
QTY   1
UI   EA
Line Price   $10,000.00
CDD   12/22/2011

3. This Contract/Order is cancelled in its entirety. Due to the resubmittal costs, it would not be economically feasible for the Contractor to continue with the award. Contractor's email, dated 6 SEP 2013, is hereby incorporated by reference. There will be no cost to either party.

4. CLIN 0002, formerly CLIN 9906, is deleted.

5. Cancellation is as follows:

(a) This supplemental agreement modifies the contract/order to reflect a no-cost settlement agreement with respect to Contractor's email, dated 6 SEP 2013.

(b) The parties agree as follows: The Contractor unconditionally waives any charges against the Government because of the cancellation of the contract/order and releases it from all obligations under the contract/order due to its cancellation. The Government agrees that all obligations under the contract/order are concluded.

Purpose of this modification is to cancel the contract as outlined above.

BX: 97X4930 5CBX 001 2620 S33189 (1) Decrease $8,975.00

AA: 97X4930 5CBX 1011600 001 2570 S33189 (2) Decrease $10,000.00

Total amount of contact/order is ( ) increase (x) decreased by $18,975.00 from $18,975.00 to $0.00.

(R4, tab 2)

9. On 14 March 2016, fully two and one-half years after the parties executed Modification No. P00001 to the contract, MAP submitted a claim to the CO in a total amount of $19,102. All of the events purporting to be the basis of the claim transpired prior to the parties' execution of Modification No. P00001 (R4, tab 14 at 1-5 of 32).

10. In a final decision promulgated on 12 May 2016, the CO denied MAP's claim in its entirety. Citing the release language contained in the modification, the CO concluded: "You thereby unconditionally waived all claims under this contract nearly three years ago when you agreed to the bilateral modification to the contract" (R4, tab 15 at 1 of 2). This appeal followed.

## DECISION[2]

In its summary judgment motion, respondent argues that MAP's appeal should be denied pursuant to the doctrines of release and accord and satisfaction (gov't br. at 1). Release and accord and satisfaction are separate affirmative defenses; however, a single document such as a contractual modification may satisfy the requirements of both doctrines. *Holland v. United States*, 621 F.3d 1366, 1377 (Fed. Cir. 2010), *cert. denied*, 132 S. Ct. 365 (2011). Because respondent has filed a motion for summary judgment, we must determine, as part of our analysis, whether genuine issues of material fact exist. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). MAP offers parol evidence to vary the terms of the modification; however, the language of the release is clear and unambiguous. MAP "unconditionally" waived any charges against the government because of the cancellation of the contract and released it from all obligations under the contract. There were no stated or implied exceptions (SOF ¶ 8). Therefore, MAP's parol evidence is inadmissible, and the release issue is amenable to summary judgment. *Colorado River Materials, Inc. d/b/a NAC Construction*, ASBCA No. 57751, 13 BCA ¶ 35,233 at 172,990-91.

To establish an accord and satisfaction, the government must demonstrate: proper subject matter, competent parties, a meeting of the minds, and consideration. *Brock & Blevins Co. v. United States*, 343 F.2d 951, 955 (Ct. Cl. 1965). The plain language of the modification satisfies all of these elements. The subject matter was appropriate, there was a meeting of the minds, and consideration existed. No question

---

[2] Based upon our disposition of respondent's motion for summary judgment, we deny appellant's motions to compel discovery and to strike as moot.

8

has been raised regarding the parties' competence. Based upon the modification's plain and unambiguous language, summary judgment on this issue is appropriate. *Dixie Construction Co.*, ASBCA No. 56880, 10-1 BCA ¶ 34,422 at 169,918.

## CONCLUSION

The Board grants respondent's motion for summary judgment and denies the appeal.

Dated: 5 January 2017

MICHAEL T. PAUL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60692, Appeal of Military Aircraft Parts, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9